Carrie M. Francis (309280)
carrie.francis@stinson.com
Lonnie J. Williams, Jr. (*pro hac vice*)
lonnie.williams@stinson.com
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925

Christopher P. Leyel (161755)
cleyel@yokasmith.com
**YOKA & SMITH, LLP**
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90071
Tel: (213) 427-2300
Fax: (213) 427-2330

Attorneys for Defendant SCI Direct, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nicole Romano and Jonathan Bono, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>SCI Direct, Inc. and DOES 1 to 50, inclusive,<br><br>              Defendants. | No.  2:17-cv-03537-ODW-JEM<br><br>**SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)**<br><br>Assigned to: Hon. Otis D. Wright, II<br><br>Hearing:      December 4, 2017<br>Time:           1:30 p.m.<br>Courtroom:  5D |

1

# **TABLE OF CONTENTS**

I.      PERTINENT FACTUAL INFORMATION ........................................................... 1

II.     EMPLOYEE MISCLASSIFICATION IN CALIFORNIA ................................... 1

    A.      Class actions alleging independent contractor misclassification ............... 4

III.    PLAINTIFFS SHOULD NOT BE GRANTED CLASS CERTIFICATION ........ 6

    A.      Without showing that every putative class member worked the number of hours necessary to establish a labor code violation, Plaintiffs cannot establish commonality. ..................................... 7

    B.      Plaintiffs cannot prove typicality in the class for the same reasons as commonality. ..................................................... 11

    C.      Plaintiffs cannot satisfy Rule 23(b)(2) or Rule 23(b)(3). ......................... 12

        i.      The relief requested by Plaintiffs relates predominantly to money damages. ................................................. 12

        ii.     Plaintiffs also fail to satisfy the predominance requirement under Rule 23(b)(3). ...................................... 14

        iii.    Plaintiffs cannot show that show that a class action is the superior method to adjudicating this matter. .................................. 21

IV.     CONCLUSION .................................................................. 24

i

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................... 14

*Arnold v. Mutual of Omaha Ins. Co.*,
202 Cal.App.4th 580 (Cal. App. 2011) .................................................. 2, 3

*Arredondo v. Delano Farms Co.*,
2012 WL 1232294 (E.D. Cal. April 12, 2012) .......................................... 7

*Ayala v. Antelope Valley Newspapers, Inc.*,
327 P.3d 165 (Cal. 2014) ...................................................................... 4, 5

*Beliz v. W.H. McLeod & Sons Packing Co.*,
765 F.2d 1317 (5th Cir. 1985) ................................................................... 7

*Bowerman v. Field Asset Svcs., Inc.*,
2015 WL 1321883 (N.D. Cal. Mar. 24, 2015)...................................... 9, 21

*Brown v. Fed. Ex. Corp.*,
249 F.R.D. 580 (C.D.Cal. 2008) ............................................................. 20

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
691 F.2d 1335 (9th Cir. 1982) ............................................................... 1, 6

*Dalton v. Lee Publications, Inc.*,
270 F.R.D. 555 (S.D. Cal. 2010) ........................................................ 7, 13

*David v. Bankers Life & Cas. Co.*,
2015 WL 3994975 (W.D. Wash. June 30, 2015) .................... 14, 15, 16, 17

*Duran v. U.S. Bank Nat. Assn.*,
59 Cal. 4th 1 (2014) ................................................................................ 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) .......................................................................... 14, 17

*Gooding v. Vita-Mix*,
2017 WL 3013406 (C.D. Cal. July 14, 2017)........................................... 16

ii

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

*Guifu Li v. A Perfect Franchise, Inc.*,
  2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ............................................................... 19

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................... 11

*Hennighan v. Insphere Ins. Sols., Inc.*,
  38 F. Supp. 3d 1083, 1100 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th
  Cir. 2016) ......................................................................................................... 3, 4

*In re High–Tech Emps. Antitrust Litig.*,
  289 F.R.D. 555 (N.D. Cal. 2013) .............................................................................. 22

*Hose v. Henry Industries, Inc.*,
  49 F.Supp.3d 906 (D. Kan. 2014) ............................................................................. 7

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161, 1165 (9th Cir. 2014) ..................................................................... 7, 9

*Mazza v. American Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................... 6

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ................................................................................. 13

*Nelsen v. King County*,
  895 F.2d 1248 (9th Cir. 2000) ............................................................................... 12

*Norris-Wilson v. Delta-T Grp., Inc.*,
  270 F.R.D. 596 (S.D. Cal. 2010) ............................................................... 5, 6, 19, 20

*O'Connor v. Uber Technologies, Inc.*,
  2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ..................................................... 17, 18

*Phelps v. 3PD, Inc.*,
  261 F.R.D. 548 (D. Or. 2009) ......................................................................... 8, 14, 16

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
  769 P.2d 399 (Cal. 1989) ............................................................................... 2, 15

*Smith v. Cardinal Logistics Management Corp.*,
  2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................................................ 8

*Soares v. Flowers Foods, Inc.*,
  320 F.R.D. 464 (N.D. Cal 2017) .............................................................................. 22

iii

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

*Spainhower v. U.S. Bank Nat. Ass'n,*
    2010 WL 1408105 (C.D. Cal. Mar. 25, 2010) ........................................... 14

*Villapando v. Exel Direct, Inc.,*
    303 F.R.D. 588 (N.D. Cal. 2014) ........................................... 8, 10, 11, 12

*Wal–Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................... 1, 6, 7, 13

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ........................................... 22, 23

**Statutes**

Cal. Lab. Code § 510 ........................................... 10, 11, 18, 23, 24

Cal. Lab. Code § 512 ........................................... 10, 18

Cal. Lab. Code § 1171 ........................................... 21

Cal. Lab. Code § 1194 ........................................... 11, 18

Cal. Lab. Code § 2802 ........................................... 19

**Other Authorities**

Fed. R. Civ. P. 23 ........................................... 1, 6, 7, 24

Fed. R. Civ. P. 23(a) ........................................... 6, 7, 24

Fed. R. Civ. P. 23(a)(2) ........................................... 14

Fed. R. Civ. P. 23(a)(3) ........................................... 11

Fed. R. Civ. P. 23(b) ........................................... 6

Fed. R. Civ. P. 23(b)(2) ........................................... 12, 13, 24

Fed. R. Civ. P. 23(b)(3) ........................................... 12, 14, 17, 19, 21, 22, 24

L.R. 11-3.6 ........................................... 7

iv

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

## I.   PERTINENT FACTUAL INFORMATION

At the same time Plaintiffs moved for California class certification under Rule 23, Plaintiffs also moved for the conditional certification of a national class under the FLSA.  In support of both motions for certification, Plaintiffs attempt to rely on the same recitation of misstated "facts."   In its Opposition Brief to Plaintiffs' Motion for Conditional Class Certification, SCI Direct analyzes in detail the mischaracterizations within Plaintiffs' "facts," and sets forth the pertinent facts necessary to resolve both of Plaintiffs' certification motions.  To avoid a repetitive read and unnecessary duplication, that factual analysis and detail will not be cut and pasted here, and is instead specifically incorporated herein by this reference.  *See* SCI Direct Opposition Brief to Plaintiffs' Motion for Conditional Class Certification (Doc. 68) at Section I, pgs. 1-8, and **Exhibits 1-8** attached hereto.

## II.   EMPLOYEE MISCLASSIFICATION IN CALIFORNIA

The class certification analysis requires a "rigorous analysis" that frequently "will entail overlap with the merits of the plaintiff's underlying claim." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011). "Although in determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true, the court also is required to consider the nature and range of proof necessary to establish those allegations." *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citations omitted).

The crux of Plaintiffs claims rest on the mistaken belief that SCI Direct misclassified ISRs as independent contractors instead of employees.  *See* Doc. 62-1 at 1. The California common law test for determining whether an individual is an employee or an independent contractor is set forth in *S. G. Borello & Sons,*

1

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

*Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989). "The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.*

While the right to terminate at-will is the first factor analyzed under the *Borello* test, "a termination at-will clause for both parties may properly be included in an independent contractor agreement, and is not by itself a basis for changing that relationship to one of an employee." *Arnold v. Mutual of Omaha Ins. Co.*, 202 Cal.App.4th 580, 589 (Cal. App. 2011) (holding that insurance agent was properly classified as independent contractor where she was required by state to obtain a license to sell insurance, was responsible for her own instrumentalities and tools, and was paid chiefly on commissions). Further, *Borello* identified several other indicia indicating whether or not an employment relationship exists:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

2

*Id.* These factors "[g]enerally . . . cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *Id.*

Even with independent contractors:

[A] company may "retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect . . . the right to make suggestions or recommendations as to details of the work . . . the right to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship.

*Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1100 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) (citation omitted).

In *Hennighan*, the court found that an insurance sales agent was an independent contractor instead of an employee based on the following evidence: (1) the agent established his own work schedule; (2) he chose which policies he wanted to sell; (3) he was not required to sell certain number of policies within given time period or to generate specific amount of revenue; (4) he was not required to work specified number of hours; (5) he could set his own appointments or choose not to work at all; (6) he could determine whether he would interact with clients in person or by telephone and whether he would seek leads internally or through membership programs; (7) he was not monitored or supervised by company; (8) he was not subject to formal or informal reviews; (9) he worked outside the office at least 50% of the time; (10) his training was

3

mostly voluntary; (11) he took rest and lunch breaks at will; and (12) he did not have any guaranteed vacation. *Id.* at 1100-01.

Nearly every factor in *Heninghan* is present here. ISRs have complete control over their schedules, hours, the location and methods by which they made sales, and the number of sales they wished to make in a given period. *See e.g.*, Plaintiffs' Exhibit 5, 6, and 30 to Friedman Decl., at ¶ 5(b). Moreover, ISR trainings were optional, the ISRs could take breaks as they wished, and they received no benefits or guaranteed vacation time. *Id.* at ¶¶ 5(a), 5(b).

### A. Class actions alleging independent contractor misclassification

In the class action context, "whether the hirer's right to control can be shown on a classwide basis will depend on the extent to which individual variations in the hirer's rights vis-à-vis each putative class member exist, and whether such variations, if any, are manageable." *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 169 (Cal. 2014). For class certification, "the key question is whether there is evidence a hirer possessed different *rights* to control with regard to its various hirees, such that individual mini-trials would be required." *Id.* at 174.

Agreements between the parties are a significant factor in assessing the right of control over one's work. *Id.* at 173. However, the rights set forth in an agreement "may not be conclusive if other evidence demonstrates a practical allocation of rights at odds with the written terms." *Id.* (citation omitted). Therefore, in deciding whether claims that hinge on common law employee status are certifiable, . . . a court appropriately may consider what control is "necessary" given the nature of the work, whether evidence of the parties' course of conduct will be required to evaluate whether such control was retained, and whether that course of conduct is susceptible to common proof—*e*.g., whether

4

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

evidence of the parties' conduct indicates similar retained rights vis-à-vis each hiree, or suggests variable rights, such that individual proof would need to be managed. *Id.* (citations omitted). *See also Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 608 (S.D. Cal. 2010) ("It would be very different if [the company] actually supervised some workers and not others, or supervised them all but in vary degrees. Likewise, it would be very different if [the company] evaluated some workers and not others, or evaluated them all but in different ways. Then the Court would see the difficulty in trying to adjudicate the workers' proper classification with respect to the putative class as a whole.") (cited by Plaintiffs).

Here, the most significant issue with Plaintiffs' class is that evidence of the parties' course of conduct is necessary to evaluate whether such control was retained. While the independent contractor agreement signed by the parties is a starting point to identify the relative rights retained by SCI Direct, those rights established in the agreement can still be waived like the rights contained in any other contract. Accordingly, evidence of the parties' course of conduct is necessary to establish whether SCI Direct waived or retained those rights. As the declarations from various sales managers show, they were the ones who regularly interacted with ISRs, making decisions on whether to hire and fire depending on the specific situation, deciding whether to impose certain sales goals, and distributing leads according to factors within their discretion. Thus, evidence of whether each sales manager retained or waived the specific rights in the agreement *as to each ISR* necessarily negates any contention that SCI Direct's course of conduct is susceptible to common proof.

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

## III. PLAINTIFFS SHOULD NOT BE GRANTED CLASS CERTIFICATION

The failure to satisfy any one requirement under Fed. R. Civ. P. 23 is fatal to class certification. *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 602 (S.D. Cal. 2010). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes,* 564 U.S. at 348 (citation omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (quotation omitted). This analysis requires a district court to conduct a "rigorous analysis" that frequently "will entail overlap with the merits of the plaintiff's underlying claim." *Dukes,* 564 U.S. at 351. "Although in determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true, the court also is required to consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691 F.2d at 1342 (citations omitted).

A party seeking class certification has the burden of establishing that each of the four requirements under Rule 23(a) – numerosity, commonality, typicality, and adequate representation – have been met,[1] in addition to at least one requirement under Rule 23(b). *See, e.g.*, *Dukes*, 564 U.S. at 350.

---

[1] Defendant is not disputing whether the requirements of numerosity and adequacy of representation have been met.

CORE/0810992.0057/136028768.1

### A. Without showing that every putative class member worked the number of hours necessary to establish a labor code violation, Plaintiffs cannot establish commonality.

To satisfy the commonality requirement of Rule 23(a), Plaintiffs must demonstrate that all class members suffered the same injury, not merely that they have all suffered a violation of the same provision of law. *See Dukes,* 564 U.S. at 350. A class meets the commonality requirement of the class certification rule when the common questions it has raised are apt to drive the resolution of the litigation. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised. *Id.*

Plaintiffs cite to numerous cases in the Ninth Circuit, many of which are unreported, for the contention that commonality is met when a putative class asserts a misclassification claim.[2] Doc. 62-1 at 13-14. The facts of those cases, however, differ significantly from those in the instant matter regarding control beyond that alleged by Plaintiffs here, with several decided not in the Rule 23 class certification context, but rather on summary judgment or conditional certification under FLSA.[3] For example, in *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555 (S.D. Cal. 2010), the defendant required carriers to deliver newspaper by a certain time each morning and to execute an independent contractor agreement setting forth the following: (a) the carrier's primary duties, including assembling and delivering the newspapers timely and in good condition; (b) the

---

[2] Plaintiffs' bullet point list of cases violates this district's briefing requirement of double spacing. *See* L.R. 11-3.6. This Court should strike Plaintiffs' discussion of these cases, as had they appropriately double-spaced the discussion, their Motion would exceed the 25-page briefing limit.

[3] *See e.g., Hose v. Henry Industries, Inc.,* 49 F.Supp.3d 906 (D. Kan. 2014); *Arredondo v. Delano Farms Co.*, 2012 WL 1232294 (E.D. Cal. April 12, 2012); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985).

7

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

carrier's obligation to supply a vehicle and equipment; (c) the carrier's pay schedule; (d) the purported understanding of the parties regarding the carrier's independent contractor status; (e) the penalties for excessive complaints, misdeliveries, and subscription cancellations; (f) the requirement to get auto insurance in specific liability amounts; (g) which party bears the risk of loss from non-payment, non-delivery, and other liabilities; (h) the contract is unassignable, but the carrier may hire substitutes or helpers; (i) the carrier will not attend employee meetings and is free to ignore all suggestions offered by the SCI Direct; (j) the manner and rate of compensation; (k) the carrier must use his or her best effort to increase circulation; (l) the parties must exchange updated information regarding subscriber cancellations and enrollments; (m) the duration of the contract; and (n) termination rights.  And, in *Villapando v. Exel Direct, Inc.,* 303 F.R.D. 588 (N.D. Cal. 2014), the company had control over vehicle maintenance, grooming, the assignment of delivery routes, and communications with customers, and kept daily logs, timesheets, and manifests.  Likewise, in *Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009), a carrier company controlled the drivers' standards of service, employment of others to assist the driver, purchase of insurance coverage, preparation of driver logs and other documents, placement of marks or logos on trucks, use of trucks for business other than driving for defendant, and termination. In *Smith v. Cardinal Logistics Management Corp.*, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008), a putative class of drivers were required to form their entities within thirty days of signing agreement, required to wear a uniform consisting of a shirt with The Home Depot and Cardinal logos, which had to be kept tucked in and the only permissible jacket was one containing The Home Depot and Cardinal logos; dispatch centers would alert the drivers, through phone message, fax or, later, email or other electronic method, as

8

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

1  to the deliveries for each driver for the following day; if the drivers had any
2  problems throughout the day, including even a flat tire, they were instructed to
3  call the dispatch center. And, in *Bowerman v. Field Asset Svcs., Inc.*, 2015 WL
4  1321883 (N.D. Cal. Mar. 24, 2015), the court initially denied class certification
5  before the class definition was significantly narrowed to: "All persons who at any
6  time from January 7, 2009 up to and through the time of judgment (the "Class
7  Period") (1) were designated by FAS as independent contractors; (2) personally
8  performed property preservation work in California pursuant to FAS work orders;
9  and (3) while working for FAS during the Class Period, did not work for any
10  other entity more than 30 percent of the time. The class excludes persons who
11  primarily performed rehabilitation or remodel work for FAS."

12      Moreover, the only Ninth Circuit case cited by Plaintiffs in their lengthy
13  bullet-point list is inapposite. In *Jimenez,* 765 F.3d at 1163, the Ninth Circuit
14  upheld class certification where the insurance company employing plaintiff
15  adjusters switched the adjusters from salaried employees to hourly status. After
16  the change, the manager of each local office had the power to file a timekeeping
17  "exception" or "deviation" from the default expectation of 8 hours per day and 40
18  hours per week. *Id.* Each local office had a non-negotiable compensation budget,
19  which created a functional limit on the amount of overtime a manager may
20  approve. *Id.* Here, ISRs were never compensated hours, nor is it alleged that any
21  local office had any similar compensation budget; the ISRs were paid solely on
22  commission, without any allegation of an office having a limit on the commission
23  made by each ISR. *See* Plaintiffs' Exhibit 5, 6, 30 to Friedman Decl., at ¶ 3(a).

24      Further, in a case relied on by Plaintiffs, the court importantly clarified the
25  commonality requirement as to a class of drivers classified as independent
26  contractors asserting the same wage-and-hour claims present in the instant matter,

27                                        9

explaining that while the question of whether the drivers were improperly classified is common to the class, the class members must have personally made deliveries for the company at some point during the class period. *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. 2014). Significantly, the court held that "an individual who never made deliveries would not be able to establish violations of at least some (if not all) of the wage and hour laws that are at issue in this case," providing an example that "an individual who never actually made deliveries for [the company], instead hiring others to drive the trucks and make the deliveries, could not recover damages for lost meal and rest breaks on their own behalf." *Id.*

Similarly, here, ISRs were free to employ assistants to help them with making sales without any approval needed by SCI Directs. Ex. 4 at ¶ 16. Like in *Villapando*, if those assistants performed any tasks solely by themselves, the ISR would not be able to establish violations of a least some (if not all) of the wage and hour laws asserted by the putative class.

Further, if an ISR never worked more than eight hours per workday or forty hours per week, or never more than five hours per day for purposes of meal breaks, the ISR could neither establish violations of the applicable labor code provision nor recover damages. To prove a failure to pay overtime compensation under Cal. Lab. Code § 510, a class member must establish that he or she either worked more than eight hours per day or forty hours per week. Further, to be eligible for overtime wages at twice the regular rate of pay, a class member must establish that he or she worked more than twelve hours on a particular day. *Id.* To establish a failure to provide meal periods under Cal. Lab. Code § 512, an ISR will need to demonstrate that on a particular day, he or she worked more than five hours *and* that SCI Direct did not permit the ISR to take a meal break. Similarly,

10

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

for a failure to pay minimum wage, Cal. Lab. Code § 1194 requires proof of the hours worked by the ISR and the amount he or she was compensated. In addition to every ISR having different hours worked, the minimum wage amount differs depending on the state, county, or city in which the ISR is located. Since Plaintiffs have presented no evidence whatsoever that ISRs in the putative class actually worked the requisite amount of hours necessary to establish Cal. Lab. Code violations.   Plaintiffs instead submit only two self-serving declarations about their own limited experience at one SCI Direct office, being Sherman Oaks. This does nothing to show there are alleged common violations throughout the state of California.  Without more, the commonality requirement is not met.

### B. Plaintiffs cannot prove typicality in the class for the same reasons as commonality.

Under Rule 23(a)(3), a putative class representative's claims or defenses must be typical of the claims or defenses of the class. Courts assess typicality by determining "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "The typicality and commonality requirements 'tend to merge' because '[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Villapando*, 303 F.R.D. at 606 (quoting *Dukes*, 564 U.S. at 346 n. 5).

In the *Villapando* case relied on by Plaintiffs, the court again imposed the same qualification on typicality as that on commonality – namely, that if a driver never made deliveries or had an assistant make the deliveries, the driver would

11

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

not be able to establish labor code violations or damages stemming from those violations. *Id.* at 606-07.

Here, the qualification in *Villapando* prevents a finding of typicality for the same reason that Plaintiffs cannot establish commonality. Plaintiffs' claims are not so interrelated that the putative class members will be fairly and adequately related. Specifically, Ms. Romano has made no representation that she employed an assistant, as discussed in *Villapando*, whereas it is undisputed that other ISRs indeed utilized assistants to complete their sales, including making calls and scheduling meetings with potential customers. Ex. 4 at 16. The claims between Ms. Romano and those who employed assistants, for example, will not be interrelated because those ISRs with assistants not only have demonstrate the activities they completed as opposed to their assistants in making sales, but also the respective time spent by each in doing so. Ms. Romano's wage-and-hour claims will not require this. As such, Plaintiffs have not met the typicality requirement.

### C. Plaintiffs cannot satisfy Rule 23(b)(2) or Rule 23(b)(3).

#### i. The relief requested by Plaintiffs relates predominantly to money damages.

Plaintiffs seek to have their putative class certified under both Rule 23(b)(2) and 23(b)(3). A class action under Rule 23(b)(2) is based on the premise that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). However, certification under this rule is not appropriate where the "relief requested relates 'exclusively or predominantly to money damages." *Nelsen v. King County,* 895 F.2d 1248, 1255 (9th Cir. 2000) (citation omitted). In other words, the "claim for monetary damages must be secondary to the primary claim

12

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

for injunctive or declaratory relief." *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir. 2003) (citation omitted).

In determining whether injunctive relief is the primary claim, a court focuses on the plaintiffs' intent in bringing suit. *Dukes,* 509 F.3d at 1186. The court must be satisfied that "(1) in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* (citation omitted).

Once again, a case cited by Plaintiffs demonstrates the impropriety of seeking a hybrid class certification here. In *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 561 (S.D. Cal. 2010), the court found that such a hybrid action is inappropriate where the majority of the class consisted of former carriers. Because the court could not grant injunctive relief on their behalf, leaving the former carriers with only money damages, the relief requested related exclusively or predominantly to money damages, precluding class certification under Rule 23(b)(2). *Id.*

Just like in *Dalton*, the relief Plaintiffs request here is predominantly for money damages. For instance, their complaint explicitly states in the caption "**CLASS ACTION COMPLAINT FOR DAMAGES**." Doc. 1, Ex. A. Moreover, Plaintiffs seek "restitution for the amounts of unpaid wages, including interest thereon, liquidated damages and/or statutory penalties." *Id.*, at pg. 29, ¶ (q). Importantly, like the drivers in *Dalton*, the putative class here expressly includes former ISRs. Doc. 62-1 at 9.  In fact, the spreadsheet produced to Plaintiffs showing all current and former ISRs for the Sherman Oaks office indicates that 37 of the 51 total ISRs for that office are no longer active.

13

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

Accordingly, injunctive relief is inappropriate here because the former ISRs, which are a majority of all ISRs at the Sherman Oaks office where Ms. Romano worked, would not benefit from such relief. At most, the only potential relief available to them would be money damages, which would apply to the entire putative class.

### ii. Plaintiffs also fail to satisfy the predominance requirement under Rule 23(b)(3).

The predominance test of Rule 23(b)(3) is "far more demanding" than the commonality test under Rule 23(a)(2). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624 (1997). Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). However, as acknowledged by yet another case relied upon by Plaintiffs, "the issue of whether [the putative class members] were independent contractors or employees is not, by itself, a claim. It is an element of each of plaintiffs' claims, but the issue is not alone determinative of anyone claim." *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 559 (D. Or. 2009).

Further, even if a uniform policy or practice is in place, courts recognize that "employees' experiences under even completely uniform policies will differ." *David v. Bankers Life & Cas. Co.*, 2015 WL 3994975, at *7 (W.D. Wash. June 30, 2015); *see also Spainhower v. U.S. Bank Nat. Ass'n*, 2010 WL 1408105, at *4 (C.D. Cal. Mar. 25, 2010) (holding that the determination of whether class members were misclassified would require an individualized inquiry, explaining

14

that "[w]ith substantial discretion as to how to operate one's branch comes the likelihood of substantial differences in how each member of the proposed class spent his or her workday.").

*Bankers Life* is instructive of the predominance inquiry where the evidence establishes that class members enjoyed different relationships with the company despite its uniform policy. There, a putative class of insurance sales agent brought suit alleging that the company they worked for misclassified them as independent contractors. *Id.* at *1. In denying class certification, the court found that individual fact questions predominate over common questions despite the company's uniform policy that enabled the company to have a basic level of control over the entire putative class.[4] *Id.* at *7. Specifically, the evidence established that some agents enjoyed different relationships with the company than other class members, in that some depended more on the company than those in business for themselves who employed assistants. *Id.* at n. 28. Moreover, depending on their seniority *and their manager*, the class members were subject to differing levels of control. *Id.* (emphasis added). In holding that plaintiffs failed to meet the predominance requirement, the court explained "[t]he common evidence presented here (namely agents' contracts) is insufficient to support a classwide finding in light of agents' varied experiences." *Id.*

*Bankers* illustrates why Plaintiffs here cannot meet their burden of demonstrating that questions of law or fact common to class members predominate. Plainitffs' sole justification for claiming that the predominance is met is that there is an issue of whether the putative class was misclassified as

---

[4] The common law test for determining whether an individual is an employee in Washington is similar to that in California. *Bankers Life* at *2 (citing *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981). Those same factors are also considered in the *Borello* test.

15

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

independent contractors. Doc. 62-1 at 24. Yet, *Phelps*, a case upon which Plaintiffs relief, flatly rejected that position, holding "the issue is not alone determinative of anyone claim." 261 F.R.D. at 559. *Bankers* also rejected the sufficiency of contract as common evidence to support the predominance inquiry, where, as here, the evidence shows varied experiences of class members.

*Bankers* also establishes why *Gooding v. Vita-Mix*, 2017 WL 3013406 (C.D. Cal. July 14, 2017) is inapposite to the instant matter. There, this Court found that the predominance requirement was met because "the overall claim that Vita-Mix had uniform employee classification policies and pay procedures as to all potential claim members makes individual actions especially prone to efficiency." However, as the court in *Bankers* held, employees' experiences will differ even if there is a completely uniform policy. 2015 WL 3994975, at *7. In *Gooding*, there was no evidence of multiple offices or sales managers who had wide discretion in how they chose to run their office, including the distribution of leads, organization of optional trainings and "call nights" or "floor days." Whereas in *Gooding*, the employees experiences did not differ, the weight of the evidence here demonstrates the individualized experiences had by each ISR in the putative class.

Just like the agents in *Bankers*, ISRs had varied experiences based on their managers. Sales managers distributed leads differently; some did so geographically while others did so based on the speed of the ISR to sell or close their outstanding leads. *Compare* Exs. 3, 6, 8 *with* Exs. 4, 5, 7. Some sales managers requested ISRs to provide updates on the number of sales made more frequently than others. *See, e.g.*, Ex. 3 at ¶ 23, Ex. 4 at ¶ 25, Ex. 6 at ¶ 11. One sales manager allowed ISRs optional "floor time," while another sales manager had "call nights" where anyone could voluntarily attend. *See* Ex. 6 at ¶ 13, Ex. 4

16

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

at ¶ 19. Another sales manager had not gone on a ride along with an ISR within the past 10 years, while other sales managers are frequently requested by ISRs to accompany them on a sale. *See* Ex. 6 at ¶ 23, Ex. 4 at ¶ 24. Further, the evidence also shows that some ISRs depended more on the company than other ISRs who were more in business for themselves. Like one agent in *Bankers*, at least one ISR who employed an assistant to make calls and schedule appointments. *See* Ex. 4 at ¶ 16. ISRs were also free to hold other jobs if they chose. *See* Dkt. 63-6 at ¶ 4(d). The foregoing establishes that determining whether class members were properly classified as independent contractors would require an individualized inquiry into each ISR's experiences that is antithetical to the predominance requirement under Rule 23(b)(3).

The predominance inquiry is not satisfied by merely the issue of whether the putative class was misclassified. Rather, the Court must also determine whether the class claims and their respective elements are susceptible to common proof. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). While Plaintiffs rely extensively on *O'Connor v. Uber Technologies, Inc.*, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015), the case presents different facts and claims as those alleged in the instant matter. First, the court there actually denied certification of one of the two claims brought forth by plaintiffs. *Id.* at *15. In denying the class claim for failure to reimburse drivers for business expenses, the court explained that class representative's decision to pursue the main category of vehicle operating expenses while abandoning other expenses that class members might have raised adequacy of representation concerns that precluded certification. *Id.* As to the tip claim certified in *O'Connor*, the court observed that Plaintiff would be required to show that Uber included a tip or gratuity in the fares it charged to its riders, but that Uber never paid these tips to its drivers. *Id.* at

1  *9. Because Uber admitted that it never gave any driver a tip, the court was thus

2  able to resolve liability on a classwide basis. *Id.*

3      Unlike the tip claim in *O'Connor*, the ten claims Plaintiffs seek to have

4  certified present substantial and individualized issues in determining whether the

5  elements of those claims have been satisfied. Even assuming *arguendo* that that

6  ISR misclassification would be susceptible to classwide proof, it does not mean

7  that the putative class members automatically satisfy the elements of proving

8  liability under the Cal. Lab. Code for failure to pay overtime compensation,

9  failure to pay all regular wages, failure to pay minimum wages, failure to pay all

10  wages due, failure to allow and pay for meal and rest breaks, failure to pay all

11  wages due at discharge, failure to provide itemized wage statements, or failure to

12  reimburse business expenses.

13      For example, to prove a failure to pay overtime compensation under Cal.

14  Lab. Code. § 510, a class member must establish that he or she either worked

15  more than eight hours per day or forty hours per week. Further, to be eligible for

16  overtime wages at twice the regular rate of pay, a class member must establish

17  that he or she worked more than twelve hours on a particular day. *Id.* To establish

18  a failure to provide meal periods under Cal. Lab. Code § 512, an ISR will need to

19  demonstrate that on a particular day, he or she worked more than five hours *and*

20  that SCI Directs did not permit the ISR to take a meal break. Similarly, for a

21  failure to pay minimum wage, Cal. Lab. Code § 1194 requires proof of the hours

22  worked by the ISR and the amount he or she was compensated. Because ISRs

23  were free to determine the hours of they worked and not required to report such

24  hours to SCI Directs, there is no common method to determine the actual hours

25  worked by each ISR necessary to satisfy the predominance requirement under

26  Rule 23(b)(3).

27                                        18

28

CORE/0810992.0057/136028768.1

Surprisingly, the cases cited by Plaintiffs demonstrate that their claims for Cal. Labor Code violations require individualize inquiry such the common issues of law or fact do not predominate. In particular, with respect to Plaintiffs' claim for failure to reimburse business expenses under Cal. Lab. Code § 2802, the court in *Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198, at *14 (N.D. Cal. Oct. 5, 2011), held that the allegation that that class members had to purchase a variety of items in order to perform their duties was not susceptible to resolution by common proof because, "for each item claimed, an inquiry into the merits looks to whether the expenditure was necessary in direct consequence to the discharge of [the putative class members'] duties, and inquiry which would likely be fact intensive."

Plaintiffs also rely on *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 609-10 (S.D. Cal. 2010), in which the court declined to certify the putative class's meal-and-rest period and expense reimbursement claims. Much like *Guifu*, *Norris* denied certification of the putative class's claim for failure to reimburse business expenses under Cal. Lab. Code § 2802 and Rule 23(b)(3) because:

[T]he putative class here includes a range of behavioral healthcare professionals who worked at a range of client sites performing a wide range of services. It is hard to see how the expenses they incurred in the process could be ascertained in one fell swoop, or even several fell swoops. The question necessarily requires a worker-by-worker, highly individual analysis. It isn't even clear that expenses were in the same ballpark across the class.

19

1   *Id.* at 610. (quotations and citation omitted). The court concluded that "[s]uch an

2   expansive and varied list of expenditures for which Plaintiffs seek reimbursement

3   is not suitable for class treatment." *Id.*

4       The *Norris* Court also denied the class's meal and rest break claims

5   because the class members weren't employed in a single location, performed a

6   range of duties under a range of different circumstances. *Id.* at 609. (citing *Brown*

7   *v. Fed. Ex. Corp.,* 249 F.R.D. 580 (C.D.Cal. 2008) (refusing to certify a class with

8   meal and rest break claims because the drivers were dispersed across many

9   different facilities, drove different routes, were subjected to different levels of

10  monitoring, had different delivery duties, and were busy at different times

11  throughout the day).

12      Just like in *Norris* and *Brown*, Plaintiffs' claims are not susceptible to

13  common proof. ISRs were employed in multiple locations across California, run

14  by numerous sales managers whose management styles widely differed. *See*

15  *generally* Exs. 3-8. Based on the location, leads were distributed differently,

16  office-specific and optional "call nights" or "floor days" were used, and each ISR

17  set their own schedule and were thus busy at different times throughout the day.

18  *Id.*; *see also* Plaintiffs' Exhibit 5, 6, and 30 to Friedman Decl., at ¶ 5(b).

19  Moreover, Plaintiffs make no effort to even provide definite and identifiable

20  categories of expenses for which they allege they are entitled to reimbursement,

21  as required by *Norris*. Further, it is certainly possible that some ISRs may have

22  never worked even close to eight hours per day or forty hours per week. And the

23  only evidence of any hours worked by ISRs are the self-serving declarations of

24  Plaintiffs. As the court explained in another case cited by Plaintiffs, "In

25  considering a motion for class certification, the substantive allegations of the

26  complaint are accepted as true, but the court need not accept conclusory or

27                                          20

28

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

generic allegations regarding the suitability of the litigation for resolution through a class action." *Bowerman v. Field Asset Servs., Inc.*, 2015 WL 1321883, at *3 (N.D. Cal. Mar. 24, 2015).

In addition to Plaintiffs' claims requiring an individualized inquiry into many aspects of each ISRs performance, Defendant is also asserting a defense that Plaintiffs were "outside salespersons," exempt from statutory overtime, minimum wage, and meal-and-rest-period requirements under Cal. La. Code § 1171 and IWC Wage Order No. 7-2001(1)(C). Pursuant to the IWC Wage order, an "outside salesperson" is one "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." Wage Order No. 7-2001(2)(J). Courts have construed the California definition as requiring that the court inquire "first and foremost, how the employee actually spends his or her time." *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 26 (2014).

The application of this defense again depends on individualized inquiries into whether a specific ISR customarily and regularly worked more than 50% of his or her time away from Defendant's offices.   Because this requires a determination of how each ISR actually spent their time, and because ISRs were not required to report the hours and days they worked, individual questions of fact predominate. As such, Plaintiffs cannot meet their burden of meeting Rule 23(b)(3)'s predominance requirement.

### iii. Plaintiffs cannot show that show that a class action is the superior method to adjudicating this matter.

In addition to demonstrating that common issues of fact or law predominate, Rule 23(b)(3) also requires Plaintiffs to establish that "a class action

21

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

is superior to other available methods for fairly and efficiently adjudicating the controversy." This involves the Court looking at four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

Here, Plaintiffs have not demonstrated that a class action would be manageable given the predominance of individual issues and the existence of other litigation already begun by class members. Normally, when a plaintiff fails to meet the predominance requirement, the court need not address the superiority requirement. *See In re High–Tech Emps. Antitrust Litig.*, 289 F.R.D. 555, 563–64 (N.D. Cal. 2013). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). "Trying [a] lawsuit as a class action presents manageability issues [where] individual inquiries [are] necessary to establish SCI Direct's liability for each of the putative class members." *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal 2017) (holding that class action was not superior because a classwide trial would be derailed by individualized inquiries into whether, when, and for how many hours each [class member] "personally serviced" her route, making a class action no more efficient or convenient than numerous individual trials).

22

CORE/0810992.0057/136028768.1

With respect to "the extent and nature of any litigation concerning the controversy already begun by or against class members," the Ninth Circuit explained:

> This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits.... If the court finds that several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, a Rule 23 proceeding only might create one more action.... Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action. Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings.

*Zinser*, 253 F.3d at 1191 (citation omitted).

In addition to the extensive individual factors among the putative class members here discussed in the predominance analysis, individuals who would be considered class members have already begun litigation on their own behalf. SCI Direct has provided Plaintiffs and this Court notice of three other lawsuits brought by ISRs, all of whom allege wrongful misclassification and Cal. Lab. Code violations. *See* Doc. 55. Finally, because these actions present the same issues of misclassification and labor code violations, there is a clear threat of multiplicity and a risk of inconsistent adjudications against SCI Directs. In all, this class action is neither manageable nor superior to other available methods.

23

SCI DIRECT'S AMENDED OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION PURSUANT TO F.R.C.P. 23(B)(2) AND 23(B)(3)

CORE/0810992.0057/136028768.1

1    Given the foregoing, especially the overwhelming existence of individual

2 issues of fact needed for ISRs to establish both liability and damages for any of

3 the ten Cal. Lab. Code claims, Plaintiffs' action is not suitable for certification

4 under Rule 23(b)(3).

## IV.    CONCLUSION

6    A class may be certified only if the Court is satisfied after a rigorous

7 analysis that every prerequisite of Fed. R. Civ. P. 23 has been satisfied. A failure

8 to meet even one prerequisite is fatal to class certification. This Court should not

9 allow Plaintiffs' suit to be certified as a hybrid class action. Because Plaintiffs'

10 claim for injunctive relief is secondary to damages, they cannot proceed to be

11 certified under Rule 23(b)(2). Moreover, in addition to failing to satisfy the

12 commonality and typicality requirements under Rule 23(a), the evidence

13 abundantly shows that Plaintiffs cannot meet the far more demanding requirement

14 of predominance under Rule 23(b)(3). Therefore, SCI Directs respectfully request

15 this Court to deny Plaintiffs' class certification on all claims.

17    DATED this 14th day of November, 2017.

24

1
2          **STINSON LEONARD STREET LLP**

3      By:   */s/ Carrie M. Francis*
              Carrie M. Francis
4             Lonnie J. Williams, Jr.
              1850 North Central Avenue
5             Suite 2100
              Phoenix, Arizona 85004-4584
6

7             Christopher P. Leyel
              **YOKA & SMITH, LLP**
8             445 South Figueroa Street, 38th Floor
              Los Angeles, CA 90071
9
              Attorneys for Defendant SCI Direct, Inc.
10

11

12               <u>**CERTIFICATE OF SERVICE**</u>

13

14          I hereby certify that on November 14, 2017, I caused the foregoing

15   document to be filed electronically with the Clerk of Court using the ECF system

16   and e-served this same date to the following:

17          Todd M. Friedman

18          Adrian R. Bacon
            abacon@toddflaw.com
19          Law Offices of Todd M. Friedman, P.C.
            21550 Oxnard St., Suite 780
20          Woodland Hills, CA 91367

21

22                            */s/  Crystal Latz*

23

24

25

26

27                            25

28
     CORE/0810992.0057/136028768.1