1  Lonnie J. Williams, Jr. (*pro hac vice*)
   lonnie.williams@stinson.com
2  Carrie M. Francis (309280)
   carrie.francis@stinson.com
3  **STINSON LEONARD STREET LLP**
   1850 North Central Avenue, Suite 2100
4  Phoenix, Arizona 85004-4584
   Tel: (602) 279-1600
5  Fax: (602) 240-6925

6  Christopher P. Leyel (161755)
   cleyel@yokasmith.com
7  **YOKA & SMITH, LLP**
   445 South Figueroa Street, 38th Floor
8  Los Angeles, CA 90071
   Tel: (213) 427-2300
9  Fax: (213) 427-2330

10 Attorneys for Defendant SCI Direct, Inc.

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| Nicole Romano and Jonathan Bono, on behalf of themselves and all others similarly situated, | No.  2:17-cv-03537-ODW-JEM |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCI DIRECT, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SCI Direct, Inc. and DOES 1 to 50, inclusive, | Hearing:   March 19, 2018 |
| Defendants. | Time:   1:30 p.m. |
| | Courtroom:   5D |
| | Judge:   Hon. Otis D. Wright, II |

Filed Concurrently with the following:
1. Notice of Motion and Motion for Summary Judgment;
2. Separate Statement of Undisputed Facts and Conclusions of Law;
3. Documentary Evidence in Support; and
4. Proposed Judgment

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

PROCEDURAL HISTORY ...............................................................3

UNDISPUTED FACTS .....................................................................3

    A.    As Independent Sales Representatives, Plaintiffs did exactly one thing: sell pre-need cremation services ..........................3

    B.    As Independent Sales Representatives, Plaintiffs were paid via "pure commission" ...............................................................4

    C.    Plaintiffs spent a significant amount of time in their personal cars and in the field, making sales ........................................4

    D.    Plaintiffs spent very little time in SCI Direct's offices........5

LEGAL STANDARD .......................................................................6

ARGUMENT ....................................................................................6

    A.    Federal Outside Sales Exemption ......................................6

        1.    Plaintiffs' Primary – And Only – Duty Was Making Sales or Obtaining Orders...........................................8

        2.    Plaintiffs regularly and customarily engaged in sales activity away from SCI Direct's office ..................9

    B.    California's Outside Sales Exemption .................................9

        1.    Meaning of Employer's Place of Business and Application to Plaintiffs' Own Admissions ..........................10

        2.    Meaning of "Selling" and Application to Plaintiffs' Interactions with SCI Direct ....................................13

CONCLUSION.................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) ................................................................ 6

*Barnick v. Wyeth*,
  522 F.Supp.2d 1257 (C.D. Cal. 2007), *aff'd sub nom.*
  *D'Este v. Bayer Corp.,* 492 F.App'x 721 (9th Cir. 2012) ............... 2, 10, 14, 15

*Brody v. AstraZeneca Pharm., LP*,
  2008 WL 6953957 (C.D. Cal. June 11, 2008), at *5 ........................... 10, 13, 14

*D'Este v. Bayer Corp.*,
  2007 WL 6913682 (C.D. Cal. Oct. 9, 2007), *aff'd,*
  *D'Este v. Bayer Corp.*, 492 F. App'x 721 (9th Cir. 2012) ................... 13, 14, 15

*Howard v. CVS Caremark Corp.*,
  2014 WL 7877404 (C.D. Cal. Dec. 9, 2014) ...................................... 2

*Lint v. Nw. Mut. Life Ins. Co.*,
  No. 09CV1373 DMS RBB, 2010 WL 4809604 (S.D. Cal.
  Nov. 19, 2010) .................................................................................. 7

*Maddock v. KB Homes, Inc.*,
  248 F.R.D. 229 (C.D. Cal. 2007) ...................................................... 10

*Menes v. Roche Labs. Inc.*,
  2008 U.S. Dist. LEXIS 4230 (C.D. Cal. Jan. 7, 2008) ....................... 13, 14, 15

*Moore v. Int'l Cosmetics and Perfumes, Inc.*,
  No. ED-cv-14-1179-DMG, 2016 WL 3556610 (C.D. Cal.
  June 24, 2016) .................................................................................. 14

*Rivera v. Schering Corp.*,
  2008 WL 6953955 (C.D. Cal. Aug. 14, 2008), at *2-3 ....................... 13, 14

## California Cases

*Price v. Starbucks Corp.*,
  192 Cal.App.4th 1136 (2011) ............................................................ 2

i

**Statutes**

29 U.S.C. § 203(k) ............................................................................................... 7

29 U.S.C. § 207(a)(1) ...................................................................................... 6, 7

29 U.S.C. § 213 ................................................................................................... 2

Cal. Code. Regs., Tit. 8, §11070 .................................................................... 2, 9

Cal. Lab. Code § 1171 ..................................................................................... 2, 9

**Other Authorities**

29 C.F.R. § 541.500(a) .................................................................................... 7, 9

29 C.F.R. § 541.700(a) ....................................................................................... 8

29 C.F.R. § 541.701 ............................................................................................ 7

Cal. Indus. Welfare Comm'n Order No. 7-2001(1)(C) ......................................... 2

F.R.C.P. 23(B)(2) ................................................................................................ 1

F.R.C.P. 23(B)(3) ................................................................................................ 1

Fed.R.Civ.P. 56(c) .............................................................................................. 6

Wage Order No. 7-2001(1)(C) ....................................................................... 2, 9

Wage Order No. 7-2001(2)(J) .......................................................................... 10

1

**INTRODUCTION**

2     This uncertified class action arises out of a dispute over the relationship

3 between SCI Direct, Inc. ("SCI Direct") and a class of Independent Sales

4 Representatives ("ISRs"), who contracted with SCI Direct to sell pre-need

5 cremation services.[1]  Plaintiffs Nicole Romano ("Romano") and Jonathan Bono

6 ("Bono") (collectively, "Plaintiffs") are two of those ISRs.[2]  As ISRs, Plaintiffs

7 had one purpose: selling pre-need cremation services to the public. Plaintiffs were

8 independent contractors, and signed agreements with SCI Direct to that effect,

9 and maintained this relationship for years.

10     In this case, Plaintiffs assert that they were misclassified as independent

11 contractors, that they were in fact employees, and that SCI Direct violated

12 California and federal law by, inter alia, failing to pay them overtime, depriving

13 them of meal and rest breaks, and permitting them to work off-the-clock[3].  Each

14 of Plaintiffs' wage claims is predicated upon Plaintiffs first proving that ISRs

15 were misclassified as independent contractors.  In other words, to recover

16 anything, Plaintiffs must prove that they and the class they represent were, in fact

17 and as a matter of law, employees.  However, based on this motion, that will be

18 unnecessary.

19     SCI Direct denies that Plaintiffs were misclassified, and if necessary will

20

21 [1] Pending before this Court are Plaintiffs' second Motions for Class Certification (Motion for Class Certification Pursuant to F.R.C.P. 23(B)(2) and 23(B)(3) (Doc. 89), and Motion for
22 Conditional Certification Pursuant to the Fair Labor Standards Act (Doc. 90)).  The granting of this motion renders those motions moot.
23 [2] Both Romano and Bono contracted with SCI Direct.  At the time of the execution of the two contracts (Docs. 91-5 and 91-6), SCI Direct was called Neptune Society, Inc.  The class being
24 sought by Plaintiffs goes well beyond those ISRs who contracted with SCI Direct.  In this case, Plaintiffs make no attempt to connect ISRs who contracted with other entities to Romano and Bono.
25 [3] The Third Amended Complaint has 10 counts:  (1) Unpaid Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Pay All Regular Wages; (4) Failure to Allow or Pay for
26 Meal Periods; (5) Failure to Allow or Pay for Rest Periods; (6) Waiting Time Penalties; (7) Failure to Provide Accurate Itemized Wage Statements; (8) Unfair Business Practices; (9) Fair
27 Labor Standards Act; and (10) Remedies Under California Private Attorney General Act.

28

demonstrate so at trial.  But even if Plaintiffs could prove that they were employees, the undisputed facts show that ISRs would be "outside salespersons" who are exempt from various statutory requirements under California and federal law, including those mandating overtime, minimum wage, and meal and rest breaks.  *See* 29 U.S.C. § 213; Cal. Lab. Code § 1171; Cal. Indus. Welfare Comm'n Order No. 7-2001(1) (C) ("Wage Order No. 7-2002"), codified at Cal. Code. Regs., Tit. 8, §11070.

The record in this case establishes that if they are employees (and they are not), ISRs fall squarely within the terms of the outside sales exemption.  SCI Direct is thus entitled to summary judgment on Plaintiffs' claims for overtime, minimum wage (off the clock), and meal-and-rest break violations.  Wage Order No. 7-2001(1)(C).  The exemption is likewise fatal to Plaintiffs' derivative claims (*i.e.*, wage statement, waiting time, unfair competition, and PAGA claims), which are dependent upon the success of Plaintiffs' underlying claims.  *See, e.g., Barnick v. Wyeth,* 522 F.Supp.2d 1257, 1261 (C.D. Cal. 2007), *aff'd sub nom. D'Este v. Bayer Corp.,* 492 F.App'x 721 (9th Cir. 2012) (holding that putative plaintiff class members were outside salespersons and granting summary judgment to employer on plaintiff's state law overtime and meal-and-rest break claims, in addition to derivative waiting time and UCL claims, which were "necessarily dependent" on the former two claims); *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) (granting summary judgment to employer on plaintiff's substantive wage claims and noting that because plaintiff's "underlying causes of action fail, the derivative UCL and PAGA claims also fail."); *Howard v. CVS Caremark Corp.*, 2014 WL 7877404, at *14-15 (C.D. Cal. Dec. 9, 2014) (denying certification of wage statement and waiting time claims that were derivative of off-the-clock and overtime claims when movant had failed to satisfy commonality as to the latter two claims).

2

## PROCEDURAL HISTORY

This suit was filed in Los Angeles County Superior Court on April 6, 2017, and removed to this Court on May 10, 2017.  SCI Direct has maintained from the onset of this litigation, when it asserted the outside sales exemption as an Affirmative Defense in its Answer filed on May 17, 2017 (Doc. 9, Affirmative Defenses at ¶14), that even if Plaintiffs could prove that ISRs were employees, they would have been outside salespersons exempt from the statutory requirement upon which Plaintiffs' claims are based.  This Affirmative Defense also appears in Defendant's Answer to the Third Amended Complaint (Doc. 85, Affirmative Defenses at ¶9).

Plaintiffs filed their first Motions for Class Certification on November 6, 2017 (Docs. 62 and 64).  Thereafter, this Court entered its Order dismissing the class action complaint, subject to amendment (Doc. 78).  Plaintiffs filed their Third Amended Complaint on December 11, 2017 (Doc. 81).  On January 18, 2018, Plaintiffs filed their second Motions for Class Certification (Docs. 89 and 90) under both California and federal law.  As noted, this Motion disposes of all claims asserted by Plaintiffs.

## UNDISPUTED FACTS

### A.    As Independent Sales Representatives, Plaintiffs did exactly one thing: sell pre-need cremation services

As the title suggests, Independent Sales Representatives do only one thing: sell.  The Agreement which Romano and Bono signed states: "The Company hereby engages Contractor to sell, and Contractor agrees to sell, contracts related to the Company's pre-need cremation business."  SUF ¶ 1.  Plaintiffs characterized Independent Sales Representatives as working in a "sales job," and both Romano and Bono described the duties as "[s]elling pre-need cremation plans to consumers."  SUF ¶ 3, 11, 12.  The operative Complaint alleges that both

3

Romano and Bono would "make sales."  SUF ¶¶ 4, 5. And the Complaint repeatedly alleges that, as Independent Sales Representatives, Romano and Bono would "sell."  SUF ¶¶ 6, 7.

Romano testified that she would "go into peoples' homes" to "try to sell them . . . a package relating to cremation services."  SUF ¶ 2.  Romano sent a text message to a sales manager which read: "Desperate for sales!"  SUF ¶ 8.  In their taxes, both Romano and Bono identified their business or occupation as either "Sales" or "Sales Counselor."  SUF ¶¶ 9, 10.  In their interrogatory responses, both Romano and Bono described their duties and responsibilities as an Independent Sales Representatives as: "Selling pre-need cremation plans to consumers."  SUF ¶¶ 11, 12.  Plaintiffs did one thing as Independent Sales Representatives: sell, and there is no evidence in the record to suggest they did otherwise.

**B.    As Independent Sales Representatives, Plaintiffs were paid via "pure commission"**

Independent Sales Representatives were paid strictly by commission.  SUF ¶¶ 13, 14.  In her interrogatory responses, Romano stated that she was paid "***pure commission*** of $200-$250 per sale of product."  SUF ¶ 16 (emphasis added). Similarly, Bono stated in his interrogatory responses that he was paid "***pure commission*** of $100-$260 per sale of product." SUF ¶ 15 (emphasis added). Again, This is not a close case, involving delivery salespersons, nor hybrid sales / service agents. Plaintiffs were paid only on sales commissions because they only sold.

**C.    Plaintiffs spent a significant amount of time in their personal cars and in the field, making sales**

In their own words, Plaintiffs spent "significant time . . . driving to sales appointments."  SUF ¶¶ 17, 18.  Indeed, Romano was "always on the road."  SUF

4

¶ 21, and "more than 50 percent of the time [she] spent as an [Independent Sales Representative] was spent out in the field trying to make sales, or driving to make sales."  SUF ¶ 20.  Romano claims that she would spend on average four to five hours per day driving to sales appointment, SUF ¶ 19, and that going to appointments "was an all-day process" amounting to "all day being [sic] on the road."  SUF ¶ 22.  Romano would drive all around southern California to knock on doors, and would sometimes return to customer sites if the appointment was a "no-show" or if the intended customer didn't answer the door.  SUF ¶¶ 29, 31, 32, 35.  Given all of this, some days, Romano would be "booked solid . . . because of the distance of driving."  SUF ¶ 30.

Similarly, Bono "drove extensively . . . to the homes of customers," and would "often times tak[e] more than 5-6 hours round trip."  SUF ¶¶ 23, 24, 25, 26.  Like Romano, Bono would knock on the doors of potential customers.  SUF ¶ 36.  Bono would even, after having made a sale, drive ***back to the customer's location*** to obtain updated credit card information if needed.  SUF ¶ 37.

**D.**    **Plaintiffs spent very little time in SCI Direct's offices**

Plaintiffs spent very little time in SCI Direct's offices.  Romano (who, as noted above, was "always on the road") admitted that she attended meetings at SCI Direct's offices "maybe once every two weeks" and that, given her position as an Independent Sales Representative (who was "always on the road"), there was no reason for her to go into the SCI Direct office every day.  SUF ¶¶ 44, 45.  Setting aside the days during which she drove "all day," by her own estimation, the few hours of Romano's day during which she was not on the field making sales were split "50%-50% between home and [SCI Direct's] office."  SUF ¶¶ 22, 47.

Similarly, Bono testified that during the short period he was affiliated with SCI Direct's West Covina office, he went into the office once per week for "floor

5

days" to make sales, but that these "floor days" did not take place once he transferred to Sherman Oaks.  SUF ¶ 39.  While Bono was in West Covina, any days (other than the once-weekly "floor days") he was in the office were few and far between and were for specific purposes – such as to drop off completed contracts or to pick up new contracts – only lasting "one to three" hours.  SUF ¶¶ 41, 40, 42.  And once he transferred to Sherman Oaks, Bono estimates that he was only in the office once or twice a week.  SUF ¶ 43.  By his own estimation, Bono "worked on average forty to forty-five hours per week" and "spent on average four to five hours a day driving to sales appointments . . . . and split his time approximately 50%-50% between home and [SCI Direct's] office, when not traveling to and making sales appointments."  SUF ¶ 46.

## LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Once the moving party meets its initial burden of establishing the absence of a genuine issue of material fact, Rule 56(c) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial, meaning that the nonmoving party must identify specific evidence from which a reasonable jury could return a verdict in its favor.  *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir. 2001).

## ARGUMENT

### A.    Federal Outside Sales Exemption

Plaintiffs' ninth claim is for overtime compensation under the FLSA, 29 U.S.C. § 207(a)(1).   Even if Plaintiffs could show that that they were misclassified as independent contractors (and they cannot), Plaintiffs' claims for failure to pay overtime compensation under the FLSA would fail because

Plaintiffs were outside salespersons, a position specifically exempted from the statute's minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (exempting "any employee employed . . . in the capacity of outside salesman" from the FLSA's minimum wage and overtime requirements). The Department of Labor ("DOL") Regulations promulgated under the FLSA define "outside salesman" as any employee:

> (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the [FLSA],[4] or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a) (footnote added).

The phrase "customarily and regularly" in the second prong means "a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701. The "customarily and regularly" standard is not high. The Department of Labor has provided guidance that selling or sales related activity outside the office "one or two hours a day, one or two times a week" satisfies the test for the exemption. *See* FLSA2007–2, DOL Opinion Letter from Paul DeCamp, Administrator at 3–4 (Jan. 25, 2007). Furthermore, courts within the Ninth Circuit have held that spending as little as 10-20 percent of the time meeting with clients or prospective clients satisfies the "customarily and regularly" standard. *See, e.g.*, *Lint v. Nw. Mut. Life Ins. Co.*,

---

[4] The FLSA defines "sale" and "sell" broadly to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

CORE/0810992.0057/137150481.8

No. 09CV1373 DMS RBB, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010). As will be shown below, Plaintiffs' sales as Independent Sales Representatives plainly satisfied these criteria. Their claim under the FLSA therefore fails as a matter of law.

### 1. Plaintiffs' Primary – And Only – Duty Was Making Sales or Obtaining Orders

An employee's "primary duty" is his or her "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). It is determined from "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole," and the relative importance of the sales duties to that job. *See id*.

Here, the facts show that not only was "selling" or "making sales" Plaintiffs' primary duty, it was their ***only*** duty. Both Romano and Bono were asked to set forth in their interrogatory answers their "job duties and responsibilities" in connection with their relationship with SCI Direct; and each identified only one duty or responsibility in their interrogatory responses: "Selling pre-need cremation plans to consumers." SUF ¶¶ 11, 12. Again, this is the rare, easy case where Plaintiffs did not work a hybrid position (such as delivery driver / salesperson or client service / salesperson) in which they only occasionally made sales. In addition, the operative Complaint repeatedly makes reference to "sales" (SUF ¶¶ 3, 4, 5) and states that Plaintiffs would "go to the homes of customers and sell them [SCI Direct's] services. SUF ¶¶ 6, 7. Plaintiffs also described themselves salespeople in their taxes (SUF ¶¶ 8, 9), and admit that they were paid by "pure commission." SUF ¶¶ 15, 16; *see also* ¶¶ 13, 14. By Plaintiffs' own repeated admissions, they did exactly one thing: selling.

8

**2.    Plaintiffs regularly and customarily engaged in sales activity away from SCI Direct's office**

The second prong of the FLSA outside sales exemption is that the person was customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.  29 C.F.R. § 541.500(a).

As in the first prong discussed above, this is the rare case where Plaintiffs' own words clearly and unequivocally establish that they "customarily and regularly" engaged in sales activities away from SCI Direct's place of business. In the operative Complaint, Plaintiffs state that they would "go to the homes of customers" for the purposes of selling.   SUF ¶¶ 6, 7. In her interrogatory responses, Romano stated that she spent "*significant time* . . . driving to sales appointments," and even went further as to state that she "spent on average *four to five hours a day* driving to sales appointments."  SUF ¶¶ 18, 28 (emphasis added). Similarly, Bono swore that he also spent "*significant time* . . . driving to sales appointments" and that he "spent on average *four to five hours a day* driving to sales appointments."  SUF ¶¶ 17, 27.  The four to five hours per day that Plaintiffs spent going to sales appointments is a far cry from "isolated or one-time tasks," and far exceeds the "one or two hours a day, one or two times a week" standard provided in the Department of Labor's Guidance and the 10-20% standard from *Lin*.

**B.    California's Outside Sales Exemption**

Under California law, "outside salespersons" are exempt from statutory overtime, minimum wage, and meal-and-rest-period requirements. Cal. Lab. Code § 1171 ("The provisions of this chapter ... shall not include any individual employed as an outside salesman[.]"); IWC Wage Order No. 7-2001(1)(C), codified at Cal. Code Regs. tit. 8, § 11070 ("The provisions of this order shall not apply to outside salespersons."). California law defines an "outside salesperson"

9

as any person; (i) 18 years of age or over;[5] (ii)who customarily and regularly works more than half the working time away from the employer's place of business; and (iii) selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." Wage Order No. 7-2001(2)(J).   In analyzing the exemption, Courts must consider "first and foremost, how the employee actually spends his or her time. *Brody v. AstraZeneca Pharm., LP,* 2008 WL 6953957 (C.D. Cal. June 11, 2008), at *5 (quoting *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 802 (Cal. 1999)).  As multiple decisions in this district have recognized, the outside salesperson exemption is informed by a simply policy rationale: persons working away from the employer's place of business are not typically, or easily, monitored by their employers.  Cal. Dep't of Labor Standards Enforcement Opinion Letter, 9/8/1998, at 2 ("DLSE Op. Ltr. 9/8/1998"), *available at* http://www.dir.ca.gov/dlse/opinions/1998-09-08.pdf ("Rarely [does the employer] know what they're doing on an hour-to-hour basis . . . Hence it is very difficult to control their hours and working conditions."), cited in *Brody*, 2008 WL 693957, at *6; *Barnick*, 522 F.Supp. at 1261-62.

### 1.   Meaning of Employer's Place of Business and Application to Plaintiffs' Own Admissions

As to the exemption's second requirement—that the employee spend more than half the working time "away from the employer's place of business"—the California Division of Labor Standards Enforcement ("DLSE") has defined an employer's "place of business" for purposes of the exemption to mean property that is "owned or controlled by [the] employer." DLSE Op. Ltr. 9/8/1998, at 2;8 *see Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 242 (C.D. Cal. 2007) (relying on DLSE Opinion Letter's definition of "employer's place of business" in

---

[5] The first requirement is not in dispute.

10

analyzing exemption). The DLSE clarifies that the employer's "place of business" is not determined by whether the physical location is "permanent" rather than "transitory," but rather whether it is "*maintained*" or "*owned or controlled*" by the employer. *Id*. at 3-4.

Elaborating on the reasons underlying this definition, in light of the policy rationale for the exemption, the DLSE also observed that it would "not…serve the purpose of the IWC's outside sales exemption to extend the exemption to employees who perform their sales activities on employer owned or controlled property," as an employer can "more easily control and monitor the hours and working conditions of salespersons who perform their sales work on property that is owned or controlled by the employer." DLSE Op. Ltr. 9/8/1998, at 2.

As to this prong of the California outside sales exemption, Plaintiffs stated in their interrogatory responses that they spent their working time as Independent Sales Representatives either 1) in their cars, driving, 2) at sales appointments, 3) at their homes, or 4) at SCI Direct's office.  SUF ¶¶ 46, 47.  There is no evidence in the record that SCI Direct "maintained" or "owned or controlled" the first three of these locations. Thus, to satisfy this prong of the California outside sales exemption, SCI Direct need only establish that Plaintiffs customarily and regularly worked more than half the working time away from SCI Direct's offices.  As will be shown, this is easily established using Plaintiff's own words.

In their interrogatory responses, both Bono and Romano stated that they "spent significant time . . . driving to sales appointments."  SUF ¶¶ 17, 18; *see also* SUF ¶¶ 33, 34.  And in their sworn deposition testimony and interrogatory responses, Plaintiffs have conceded that they worked more than half the working time away from SCI Direct's offices.  In her recent deposition, Romano testified under oath as follows:

11

Q. So more than 50 percent of the time you spent as an independent sales rep was spent out in the field trying to make sales, or driving to make sales, correct?

A. Yes.

SUF ¶ 20.  Thus, by her own admission, Romano spent "more than half" the working time in the field, *i.e.*, away from SCI Direct's office.  No further discussion is needed as to Romano.  Similarly, Bono stated in his sworn interrogatory responses that, during the time he was an Independent Sales Representative, he:

- "worked on average forty to forty-five hours per week"
- "spent on average four to five hours a day driving to sales appointments"
- "split his time approximately 50%-50% between home and Defendant's office, when not traveling to and making sales"

SUF ¶¶ 46, 27; *see also* SUF ¶ 38.  Even construing Bono's estimates in the manner most favorable to him, out of a forty-five hour week, Bono spent:

- 20 hours driving
- 12.5 hours working from home
- 12.5 hours in SCI Direct's office

Thus, Bono spent ***at minimum***, 72% of his working time away from any location which SCI Direct owned, controlled, or maintained.[6]  And the few times he was in the office, these visits were for specific purposes and lasted a short time.  SUF ¶¶ 41, 40, 42.  This easily satisfies the "more than half" standard under California law.  No further discussion is needed as to Bono, either.

---

[6] At the high end, according to Bono's own estimates, out of a forty-hour week, he drove twenty-five hours, was at home for 7.5 hours, and in SCI Direct's office for 7.5 hours.  In such a week, this results in Bono having worked away from any location owned, controlled or maintained by SCI for 81.25% of the time.

12

1
2

### 2. Meaning of "Selling" and Application to Plaintiffs' Interactions with SCI Direct

3
4
5
6
7
8
9
10
11
12
13
14
15
16

Observing that neither the Labor Code nor the Wage Order defines what it means to "sell" within the meaning of California's outside sales exemption, courts have looked to the dictionary, "defining 'sell' to include 'influenc[ing] or induc[ing] to make a purchase.'" *Brody*, 2008 WL 6953957, at *8 (*citing* Webster's 3rd New World Int'l Dictionary). The Court in *Brody* applied that definition to find the plaintiff sales representative was engaged in "selling" for purposes of the outside sales exemption: "Plaintiff asked physicians to prescribe more of the product he was detailing; such requests, under both Plaintiff's and Defendant's view, and this Court's understanding of the term, constitute getting a 'close.' This is quintessentially 'selling' conduct directed at physicians as customers." *Id.* at *7. Similarly, this Court in *Rivera v. Schering Corp.,* 2008 WL 6953955 (C.D. Cal. Aug. 14, 2008), at *2-3, held that an employee engaged in "selling" where she "'close[d]' calls with physicians by asking for a 'commitment'" to prescribe. 2008 WL 6953955, at *2.

17
18
19
20
21
22
23
24
25
26

Applying this definition of "selling," this Court has granted summary judgment to employers in several wage-and-hour cases on the grounds that such plaintiffs are exempt outside salespersons, notwithstanding that none of these plaintiffs have ever formally executed a sales transaction by personally collecting money in exchange for a product. *See D'Este v. Bayer Corp.*, 2007 WL 6913682, at *4 (C.D. Cal. Oct. 9, 2007), *aff'd*, *D'Este v. Bayer Corp.*, 492 F. App'x 721 (9th Cir. 2012); *Rivera*, 2008 WL 6953955, at *2-3 (the "mere fact that Plaintiff does not physically hand over a product in exchange for compensation" does not "prevent[ ] her from falling within the terms of the exemption"); *Brody*, 2008 WL 6953957, at *8-9; *Menes v. Roche Labs. Inc.,* 2008 U.S. Dist. LEXIS 4230, at *4

27
28

13

CORE/0810992.0057/137150481.8

(C.D. Cal. Jan. 7, 2008) (sales person "clearly qualifies as an exempt outside salesperson" despite not "actually tak[ing] money…in exchange for a Roche product"); *Barnick*, 522 F. Supp. 2d at 1254-65.

As shown above in the discussion regarding the FLSA outside sales exemption, Plaintiffs did exactly one thing as Independent Sales Representatives: sell.   It has been recently held in this District that there is no substantive distinction between the "selling" prong of the federal and California outside sales exemptions.   *See Moore v. Int'l Cosmetics and Perfumes, Inc.*, No. ED-cv-14-1179-DMG (DTBx), 2016 WL 3556610, at *5 (C.D. Cal. June 24, 2016). Therefore, SCI Direct incorporates section A (1), *supra*, as if set forth herein.

## CONCLUSION

This is the rare case where application of the California and federal outside sales exemptions is entirely straightforward and beyond dispute.  Plaintiffs did only one thing: sell.  By Plaintiffs' own admissions, they were on the road all the time, sometimes the entire time, selling away from SCI Direct's offices.  And by Plaintiffs' own admissions, they were in SCI Direct's office rarely, easily surpassing California's "more than half the working time" standard and the "isolated or one-time" standard under federal law.  If Plaintiffs were employees of SCI Direct – and they are not – they would fall squarely within the outside sales exemptions, and Plaintiffs' claims would fail.

Indeed, the case for the exemption here is at least as strong, if not stronger, as in the five cases where courts within this District previously granted summary judgment to employers on the basis of the outside sales.  *See D'Este*, 492 F.App'x at 722; *Rivera,* 2008 WL 6953955, at *2-3; *Menes,* 2008 U.S. Dist. LEXIS 4230, at *2; *Brody*, 2008 WL 6953957 at *8; *Barnick,* 522 F.Supp.2d at 1261.  The Ninth Circuit affirmed the summary judgment rulings in three of these cases.  *See*

14

1  *D'Este,* 492 F.App'x at 722 (affirming district court's holdings in *Menes, D'Este,*
2  and *Barnick*.).

3        Summary judgment should be granted as to all claims.

4
5        RESPECTFULLY SUBMITTED this 7th day of February, 2018.

6
7                                      **STINSON LEONARD STREET LLP**

8                          By:    */s/ Lonnie J. Williams, Jr.*
                                  Lonnie J. Williams, Jr.
9                                 Carrie M. Francis
                                  1850 North Central Avenue
10                                Suite 2100
                                  Phoenix, Arizona 85004-4584
11
                                  Christopher P. Leyel
12                                **YOKA & SMITH, LLP**
                                  445 South Figueroa Street, 38th Floor
13                                Los Angeles, CA 90071

14                                Attorneys for Defendant SCI Direct, Inc.

15
16                          **CERTIFICATE OF SERVICE**
17        I hereby certify that on February 7, 2018, I caused the foregoing document
18  to be filed electronically with the Clerk of Court using the ECF system and e-
19  served this same date to the following:

20
      Todd M. Friedman
21    tfriedman@toddflaw.com
      Adrian R. Bacon
22    abacon@toddflaw.com
      Law Offices of Todd M. Friedman, P.C.
23    21550 Oxnard St., Suite 780
      Woodland Hills, CA 91367
24
25                                       */s/ Lonnie J. Williams, Jr.*
26
27                                      15
28    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
      OF MOTION FOR SUMMARY JUDGMENT
      CORE/0810992.0057/137150481.8