# United States District Court
# Central District of California

| | |
|---|---|
| NICOLE ROMANO, JONATHAN BONO, and JAMES DOYLE, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>SCI DIRECT, INC., TRIDENT SOCIETY INC., NEPTUNE SOCIETY OF AMERICA, INC., and NEPTUNE MANAGEMENT CORP.,<br><br>           Defendants. | Case № 2:17-cv-03537-ODW ()<br><br>**ORDER GRANTING PRELIMINARY APPROVAL [134]** |

## I. INTRODUCTION

Plaintiffs Nicole Romano, Jonathan Bono, and James Doyle allege that Defendants SCI Direct, Inc., Trident Society Inc., Neptune Society of America, Inc., and Neptune Management Corp.[1] misclassified Plaintiffs, and the class they seek to represent, as independent contractors rather than employees. As such, Plaintiffs allege that they were denied certain benefits like meal and rest periods, regular and overtime

---

[1] Defendants Trident Society Inc., Neptune Society of America, Inc., and Neptune Management Corp. are purportedly subsidiaries/divisions of Defendant SCI Direct, Inc. (*See* Decl. of Adrian R. Bacon ("Bacon Decl.") Ex. A ("Settlement Agreement"), ¶ 4.2, ECF No. 135-1.)

wages, reimbursement for reasonable business expenses, and other benefits. (*See* Fourth Am. Compl. ("FAC") ¶ 2, ECF No. 133.)

The parties reached a settlement on behalf of the class, and Plaintiffs now move without opposition for preliminary approval of the settlement.[2] (Mot. for Prelim. Approval of Class Action Settlement ("Mot."), ECF No. 134.) For the reasons discussed below, the Court **GRANTS** the Motion.

## II. BACKGROUND

### A. Procedural Background

Plaintiff Romano filed this lawsuit in Los Angeles Superior Court on April 6, 2017, on behalf of herself and other similarly situated employees. (Notice of Removal Ex. A, ECF No. 1.) Defendant SCI Direct, Inc. removed the case on May 10, 2017, claiming that the Court had subject matter jurisdiction under 28 U.S.C. § 1332(c)(1) and the Class Action Fairness Act ("CAFA"). (*See generally* Notice of Removal.)

Following several motions and orders from the Court, on December 21, 2018, pursuant to the parties' settlement agreement, Plaintiffs filed their Fourth Amended Complaint and alleged the following causes of action on behalf of themselves and the putative class: (1) Unpaid overtime wages under the California Labor Code and Industrial Welfare Commission Wage Order No. 4; (2) Failure to pay minimum wages under the California Labor Code; (3) Failure to pay all regular wages under the California Labor Code and the Wage Order; (4) Failure to allow or pay for meal periods under the California Labor Code; (5) Failure to allow or pay for rest periods under the California Labor Code; (6) Waiting time penalties under the California Labor Code; (7) Failure to provide accurate itemized wage statements under the California Labor Code; (8) Unfair business practices under the California Business and Professions Code; (9) Failure to pay overtime under the FLSA, 29 U.S.C. § 216(B); (10) Failure to reimburse business expenses under the California Labor Code; and (11) PAGA claim seeking civil

---

[2] After carefully considering the papers filed in connection to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

2

penalties for violations of the California Labor Code and sections 3, 4, 11, and 12 of the Wage Order. (*See generally* FAC.)

### III. SETTLEMENT TERMS

The key provisions of the parties' Class Action Settlement Agreement ("Settlement Agreement") are set forth below.

**A.  Proposed Class**

The Settlement Agreement defines the proposed class as: "All individuals who contracted with or provided services to SCI Direct, as an independent sales representative in California from May 18, 2014 to February 1, 2019 (the 'Class Period')." (Settlement Agreement ("SA") § 2.5.) The parties estimate that there are approximately 230 potential members of the class ("Class Size"). (SA § 10.2.)

**B.  Payment Terms**

In full settlement of the claims asserted in this lawsuit, Defendants agree to pay $1,650,000 (the "Total Settlement Amount"). (SA § 2.1.) The Total Settlement Amount includes PAGA penalties, the incentive award, and the fees and costs of the Settlement Administrator. (SA §§ 10.4, 10.6–10.8.) Any amount not used by the Settlement Administrator will be added to the amount distributable to the class members. (SA § 10.7.) If the Class Size increases by 10% or more (i.e. 253 class members or more), then the Total Settlement Amount will be adjusted upwards, pro rata, for each additional member. (SA § 10.2.)

After deducting the payments from the Total Settlement Amount, the estimated total distributable amount to the class members is $1,490,000. (SA § 10.8.) After 120 days, any uncashed checks will revert to Defendants, with the exception of the settlement amount related to the PAGA penalties. (SA §§ 10.1, 14.2.) The settlement amount related to the PAGA penalties will be delivered to California Controller's Unclaimed Funds in the name of the class member. (SA § 14.2; Mot. 2.)

## C. Payment Calculation

Plaintiffs represent that the most cognizable damage is the reimbursement of business expenses. (Decl. of Adrian R. Bacon ("Bacon Decl.") ¶ 27, ECF No. 135.) Since potential class members traveled a substantial amount in their own vehicles as part of their employment, Plaintiffs seek to recover damages for the mileage reimbursement and represent that the other business expenses would be de minimis comparatively. (Bacon Decl. ¶ 32.) Due to the difficulty in obtaining records to establish that each member was entitled to their reasonable business expenses, including the mileage reimbursement, the parties agreed to calculate each members' settlement based on the total Qualifying Workweek(s)[3] worked by the class member. (Bacon Decl. ¶¶ 34–36.)

If no class members opt-out of the settlement, the payment is calculated as follows: Payment = (Distributable Amount ÷ Qualifying Workweeks of Class Members) x (Authorized Claimant's Qualifying Workweeks). (SA § 11.3.)

If one or more class members opt-out, then the payment is calculated as follows: Payment = ((Distributable Amount – LWDA Payment) ÷ Qualifying Workweeks of Class Members) x (Authorized Claimant's Qualifying Workweeks)). (SA §§ 11.4.) The LWDA Payment will then be distributed pro rata to the remaining class members.[4] (SA § 11.5.)

## D. Attorneys' Fees and Costs

The Settlement Agreement authorizes Plaintiffs' counsel to petition the Court for approval of attorneys' fees in an amount not to exceed $825,000 and costs not exceeding

---

[3] Qualifying Workweeks is defined as "the total number of days worked by any Class Member during the Class Period divided by seven (7). (SA § 3.29.)

[4] There appears to be a formulaic error regarding the calculation if no class members opt-out. The Court cannot discern from the papers submitted why the LWDA Payment is not carved out of the formula (similar to if one or more members opt-out) because pursuant to the Settlement Agreement, the LWDA Payment is made on a pro-rata basis and is not based on the number of Qualifying Workweeks.

4

$25,000. (SA § 10.3.) This amount is separate and will not be deducted from the Total Settlement Amount. (*Id.*)

### E. Incentive Payment

The Settlement Agreement provides that Plaintiffs' counsel will petition the Court for approval of incentive awards of $5000 for Plaintiff James Doyle, $10,000 for Plaintiff Jonathan Bono, and $15,000 for Plaintiff Nicole Romano. (SA § 10.4.)

### F. Payment to the California Labor and Workforce Development Agency

The Settlement Agreement requires payments to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA. (SA § 10.6.) The parties agreed to allocate $160,000 of the Total Settlement Amount for PAGA penalties, $120,000 (75% of $160,000) of which shall be paid to the LWDA, with the remaining $40,000 to be distributed to the settling class members on a pro rata basis. (SA § 10.6.)

### G. Releases

The Settlement Agreement provides that all class members other than those who opted-out will:

> [F]ully release and discharge the Released Persons from all Released Claims, whether known or unknown during the Class Period. Class Representatives and SCI Direct stipulate and agree that the consideration paid to the Class Members pursuant to this Agreement compensates the Class Members for all wages and penalties due to them arising from the claims alleged in the operative Complaint.

(SA § 18.1.) Further, the Settlement Agreement provides that the settling class members waive and relinquish the rights and benefits of California Civil Code section 1542.[5] (SA § 3.26.)

### H. Notice to Settlement Class

Within fifteen (15) days of this Order, Defendant SCI Direct will provide the potential class members' contact information and number of total qualifying workweeks

---
[5] The Court notes that California Civil Code section 1542 was updated on January 1, 2019. The parties and counsel may wish to review the update prior to final approval.

5

worked during the class period to the Administrator. (SA § 5.4.1.) Within fifteen (15) days of receipt of the information, the Administrator will calculate the settlement payment to each class member and provide notice of the settlement to the potential class members via first class U.S. mail. (SA § 5.4.2.) The Notice of Settlement ("Notice") also instructs potential class members how to opt-out or object to the Settlement Agreement. (SA § 5.4.7; *see also* Bacon Decl. Ex. B ("Notice"), ECF No. 135-2.) The Settlement Agreement details the Administrator's method of updating addresses and managing mail returned as undeliverable. (SA § 5.4.3–5.4.5.) The Administrator's costs and expenses in carrying out its duties are estimated to be $10,000. (SA § 10.7.)

Plaintiffs also submit a proposed Notice. The Notice informs the potential class members that they need not take any action to receive their share of the settlement proceeds. (Notice 3, 4.) The Notice also informs class members how they may object to the settlement or request exclusion from the class. (Notice 3, 4.) Objecting class members must submit their objection within forty-five (45) days of the Administrator mailing the Notice and indicate whether they intend to appear at the final approval hearing. (Notice 4.)

If more than 10% of the class members request to be excluded from the class, Defendants may cancel and void the Settlement Agreement. (SA § 17.4.)

## IV. ANALYSIS

The Court must first address whether the class may be provisionally certified for settlement purposes only, then evaluate the fairness, adequacy, and reasonableness of the proposed settlement, and finally review the adequacy of the proposed Notice.

### A. Class Certification

Class certification is a prerequisite to preliminary settlement approval. Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b), specifically here, Rule 23(b)(3): (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

### 1. Rule 23(a) Requirements

The proposed class meets all of the 23(a) factors. First, it is sufficiently numerous. While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). There are currently an estimated 230 potential members of the settlement class, and joinder of these individuals would be impracticable. Thus, this class is sufficiently numerous.

Next, the claims of the potential class members demonstrate common questions of fact and law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact."). Plaintiffs allege that (1) all potential class members were subjected to Defendants' wage statement policies that resulted in Labor Code violations; (2) Defendants failed to reimburse all potential class members for reasonable business expenses in violation of California Labor Code section 2802; (3) all potential classes members were misclassified in violation of the California Labor Code; and (4) all potential class members are entitled to damages. (Mot. 17; s*ee also* FAC ¶¶ 4, 7, 118, 125.) At this

7

juncture, no discernable individualized issues appear to exist which might detract from the common questions of fact and law. As such, the class meets this requirement.

Plaintiffs also meet the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims arise out of the same circumstances as those of the other class members, specifically whether Defendants misclassified Plaintiffs resulting in various legal violations. (*See generally* FAC.) Thus, Plaintiffs share material common factual and legal issues with the other settlement class members and satisfies typicality.

Finally, Plaintiffs and their counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Plaintiffs and their counsel have vigorously pursued this case and represent that they have no known conflicts of interest with the class members. (Bacon Decl. ¶ 21.) Counsel appears well-qualified as they are experienced with wage-and-hour class action litigation. (Bacon Decl. ¶¶ 40–43.) In this action, they have engaged in thorough investigation, discovery, motion practice, mediation, and negotiations on behalf of the class. (*See* Bacon Decl. ¶¶ 10–13, 38.) These facts support counsel's adequacy and vigorous representation of the putative class. As such, the proposed class and its representatives satisfy the Rule 23(a) requirements. For the same reasons, Plaintiffs' counsel is appointed to serve as Class Counsel for the purposes of this settlement as counsel has the requisite experience, knowledge, qualifications, and resources to represent the class members in this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A).

### 2. *Rule 23(b)(3) Requirements*

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, for the purposes of settlement, questions of law or fact common to class members predominate over individualized questions because the issue—whether all members of the class were improperly classified thereby entitling Plaintiffs and the class to receive damages—is common to the class. Further, a class action appears to be a far superior method of adjudicating the class members' claims. The overall claim that all potential class members were misclassified resulting in the alleged violations makes individual actions prone to inefficiency. Hundreds of individual class members bringing individual actions would be inefficient, and the costs of litigation would dwarf any recovery.

As each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met, the class may be provisionally certified for settlement purposes.

## B. Fairness of Settlement Terms

The Court must also consider whether the proposed settlement warrants preliminary approval. For preliminary approval, "the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks and alterations omitted). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety"; a court may not "delete, modify or substitute" its provisions. *Id.*

The settlement negotiations appear fair and adequate and the proposed settlement terms appear to come within the range of possible judicial approval.

### 1. *Adequacy of Negotiations*

The Court is satisfied that settlement was the product of "serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319. The parties thoroughly investigated their claims, engaged in discovery, and briefed numerous motions before participating in a day-long mediation with the Honorable Charles McCoy (ret.) that ultimately resulted in the Settlement Agreement. (Bacon Decl. ¶¶ 10–13.) Plaintiffs assert that they considered the exposure analysis of continuing to litigate the claims and potentially receive a reduced amount. (Bacon Decl. ¶ 34.) Plaintiffs even rejected "substantial individual settlement offers . . . to pursue the case on a class-wide basis." (Bacon Decl. ¶ 38.) Based on Plaintiffs' damages analysis, Plaintiffs represent that class members will receive "their full amount of reimbursable business expenses . . . with additional value for the penalties." (Bacon Decl. ¶ 35.) Under these circumstances, the Court accepts that the settlement negotiations were adequate.

### 2. *Settlement Terms*

After carefully reviewing the terms of the settlement, the Court finds that the settlement does not unfairly give preferential treatment to any party and falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there is risk to both parties in continuing towards trial. The parties reached settlement with trial approaching and only after conducting discovery and obtaining several orders from the Court. The settlement treats all members of a uniform class equally, awarding each class member with a pro rata share of the settlement proceeds based on a qualifying workweek calculation and a pro rata share of the PAGA penalties. (*See* SA § 11.2.) Accordingly, the settlement does not unfairly favor any member, represents a compromise, and avoids uncertainty for all parties involved.

### 3. Settlement Funds

The Court notes that the incentive award for Plaintiffs Bono and Romano appear to be substantial and beyond the amount that courts in this jurisdiction have deemed presumptively reasonable.

#### a. Incentive Award

The Motion seeks approval of an incentive award for Plaintiffs Doyle, Bono, and Romano in the amount of $5000, $10,000, and $15,000, respectively. (Mot. 9; SA § 10.4.)

"[D]istrict courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). In evaluating incentive awards, the court should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb.

16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Here, there are three representative plaintiffs and each incentive award sought amounts to a small fraction of the total distributable amount. Mr. Doyle assisted counsel to "develop claims . . . [and] helped identify [a] damages analysis for mediation." (Decl. of James Doyle ("Doyle Decl.") ¶ 3, ECF No. 134-3.) Mr. Doyle estimated that he spent approximately 15–20 hours assisting in the case. (Doyle Decl. ¶ 4.) As a $5000 incentive award is presumed reasonable, and as Mr. Doyle has sufficiently demonstrated that he adequately participated and represented the class in litigation, on this preliminary record the Court finds that the incentive payment of $5000 falls within the range of possible approval to compensate Mr. Doyle for his efforts.

Similar to Mr. Doyle, Mr. Bono assisted counsel to develop Plaintiffs' claims, but also responded to discovery and sat for an all-day deposition. (Decl. of Jonathan Bono ("Bono Decl.") ¶ 3, ECF No. 134-1.) Mr. Bono estimated that he spent approximately 30–35 hours assisting counsel with the case. (Bono Decl. ¶ 4.) However, Mr. Bono has not provided sufficient justification to warrant an award that is twice the presumed award. On this record, the Court does not find adequate support for an incentive award double the presumed-reasonable amount and is inclined to reduce the incentive award. However, Mr. Bono's incentive award will depend on its adequate support upon the motion for final approval.

Ms. Romano similarly seeks an incentive payment that is above the presumed-reasonable amount, specifically $15,000. (Decl. of Nicole Romano ("Romano Decl.") ¶ 9, ECF No. 134-2.) Similar to Mr. Doyle and Mr. Bono, Ms. Romano also assisted counsel develop the claims. (Romano Decl. ¶ 8.) However, Ms. Romano also assisted with drafting the initial complaint, participating in written discovery, and engaging in an all-day deposition. (Romano Decl. ¶ 5.) Ms. Romano also attended the all-day mediation that ultimately resulted in the resolution of this case. (Romano Decl. ¶ 6.) Ms. Romano estimated that she spent approximately 90–100 hours in connection with

this case. (Romano Decl. ¶ 8.) Although Ms. Romano was involved in this case, more so than the other two class representatives, Ms. Romano has not justified an incentive payment triple the presumed-reasonable amount. Accordingly, as with the incentive award to Mr. Bono, on this record, the Court is inclined to reduce the award, subject to adequate support for such an extreme departure upon the motion for final approval.

### b. *Attorneys' Fees*

The Settlement Agreement provides that Plaintiffs' counsel will seek attorneys' fees in an amount not to exceed $825,000, or one-third of the entire settlement fund, and costs not exceeding $25,000. (*See* SA § 10.3.) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Twenty-five percent recovery is the benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward departures to fall within the acceptable range. *See id.* at 942 (noting 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (upward departure acceptable when expressly explained). Further, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.

Counsel are experienced wage-and-hour class action litigators and the fee request, while high, falls within the range identified as potentially acceptable in the Ninth Circuit. Accordingly, preliminary approval is appropriate, though final approval will depend on counsel providing sufficient information to support the requested award.

### 4. *Release of Claims*

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 327; *see also Hesse v. Sprint*

*Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted).

Plaintiffs indicate that the release is "limited in scope to the facts and employment claims alleged, or which could have been alleged . . . which occurred during the Class Period." (Mot. 7–8; *see also* SA § 3.31.) Thus, while the release is broad in that it releases claims both alleged or that could have been alleged, the released claims are appropriately limited to the factual predicate of this action.

## C. Sufficiency of Notice

To find notice to absent class members sufficient, the Court must analyze both the type and content of the notice. Here, the Court finds the Notice sufficient.

### 1. *Type of Notice*

"[T]he court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties agree that the Administrator will distribute the Notice to all potential class members. (SA § 5.4.2.) The contact information for potential class members is available through Defendants' records, and the Administrator will send the Notice via U.S. Mail. (SA §§ 5.4.1–5.4.2.) Prior to mailing the notices, the Administrator will use the U.S. Postal Service National Change of Address registry to verify the accuracy of the addresses and perform skip traces when necessary. (SA §§ 5.4.3, 5.4.4.) The Administrator may also conduct any investigation it deems economically reasonable within industry practice to determine the correct address. (SA § 5.4.5.) The class members will have forty-five (45) days from the date the Administrator mails the Notice to request exclusion or object to the Settlement Agreement. (SA § 5.4.9.)

The Court finds the procedures for the Notice sufficient and the most practicable under the circumstances.

### 2. *Content of Notice*

Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

The Court finds the Notice contains all the information required under the Federal Rules. The Notice includes the basics of the case, the class definition, and the class action's claims. (Notice 1–2.) The Notice explains the procedure for opting out and objecting to the settlement. (Notice 3–4.) The Notice indicates that, to participate and receive an award, a class member need not do anything. (Notice 4.) Further, the Notice provides that remaining a member of the class and receiving a payment will result in the class member giving up his/her claims and being bound by the Settlement Agreement. (Notice 2–4.) Thus, the Court finds the Notice content satisfactory.

## V. CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The final approval hearing shall be held on **November 18, 2019 at 1:30 p.m.** at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

May 21, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**